

ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2015 OCT 21  AM 11:44

CLERK OF COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSHUA BROWN,<br>　　　　　Plaintiff, | § | |
| VS | § | |
| | § | |
| | § | 4-15CV 791-y |
| TEXAS CHRISTIAN UNIVERSITY | § | |
| 　BOARD OF TRUSTEES, | § | |
| TEXAS CHRISTIAN UNIVERSITY; | § | |
| CLARENCE SCHARBAUER III, | § | |
| 　IN OFFICIAL CAPACITY; | § | |
| VICTOR BOSCHINI, | § | |
| 　IN OFFICIAL CAPACITY; | § | |
| CRAIG ALLEN, | § | |
| 　IN OFFICIAL CAPACITY; | § | |
| CHRISTOPHER DEL CONTE, | § | |
| 　IN OFFICIAL CAPACITY; | § | |
| TRENT JOHNSON, | § | |
| 　IN OFFICIAL CAPACITY; | § | |
| 　　　　　Defendants, | § | |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, JOSHUA BROWN, Plaintiff, and files this his Original Petition for

Declaratory Judgment against TEXAS CHRISTIAN UNIVERSITY BOARD OF TRUSTEES,

TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER III, VICTOR BOSCHINI,

CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT JOHNSON, and other unknown

individuals, hereinafter referred to as Defendants.

## I. DISCOVERY PLAN

The Plaintiff seeks a level of discovery that is within the Federal Rules of Civil Procedure

suitable to prove his claims against the Defendants named herein and other unknown Defendants

that may be added to this Petition at a later date.

## II. PARTIES

1.     Plaintiff JOSHUA BROWN (hereinafter "BROWN") is a citizen of the State of Texas who currently resides in Tarrant County, Texas as a full-time student at Texas Christian University.  At all times material hereto, JOSHUA BROWN was a member of the Texas Christian University varsity basketball team with full membership and privileges.  The Plaintiff, a senior mathematics major on track to graduate in the Summer of 2016, has been subjected to unlawful harassment, bullying, intimidation, retaliation, racial discrimination, and religious discrimination at the hands of the Defendants named, and unnamed, herein.

2.     Upon information and belief, Defendant TEXAS CHRISTIAN UNIVERSITY BOARD OF TRUSTES (hereinafter "TCUB"), manages, and controls Texas Christian University, a private higher learning institution in Texas.  Texas Christian University is engaged in commerce or in an industry or activity affecting commerce.  Texas Christian University is a business that does business in State of Texas and receives federal funds to operate.  This Defendant may be served with citation by serving Clarence Scharbauer III at 1811 Heritage Boulevard, Suite 200, Midland, Texas 79707.

3.     Upon information and belief, Defendant the TEXAS CHRISTIAN UNIVERSITY (hereinafter "TCU") is a private higher learning institution in Texas.  Texas Christian University is engaged in commerce or in an industry or activity affecting commerce.  Texas Christian University is a business that does business in the State of Texas and receives federal funds to operate.  This Defendant may be served with citation by serving Victor Boschini at Texas Christian University; Office of the President, Saddler Hall 4001, 2800 S. University Drive, Fort Worth, Texas 76129.

Plaintiff's Original Petition for Declaratory Relief
2 of 31

4.      Upon information and belief, Defendant CLARENCE SCHARBAUER III is the chairman of the TCUB. This Defendant is engaged in commerce or in an industry or activity affecting commerce. The TSUB is a business that does business in the State of Texas and received federal funds to operate. This Defendant may be served with citation by serving Clarence Scharbauer III at 1811 Heritage Boulevard, Suite 200, Midland, Texas 79707.

5.      Upon information and belief, Defendant VICTOR BOSCHINI is the Chancellor of TCU. TCU is a higher learning institution in Texas that receives federal funds to operate. TCU is engaged in commerce or in an industry or activity affecting commerce. TSU is a business that does business in the State of Texas. This Defendant may be served with citation by serving Victor Boschini at Texas Christian University; Office of the President, Saddler Hall 4001, 2800 S. University Drive, Fort Worth, Texas 76129.

6.      Upon information and belief, Defendant the CRAIG ALLEN (hereinafter "ALLEN") is the director of housing at TCU. TCU is a private higher learning institution in Texas. TCU is engaged in commerce or in an industry or activity affecting commerce. TCU is a business that does business in the State of Texas and received federal funds to operate. This Defendant may be served with citation by serving CRAIG ALLEN Texas Christian University; Office of Housing and Residence Life, 2800 S. University Drive, Fort Worth, Texas 76129.

7.      Upon information and belief, Defendant CHRISTOPHER DEL CONTE (hereinafter DEL CONTE) is the athletic director at TCU. TCU is a private higher learning institution in Texas. TCU is engaged in commerce or in an industry or activity affecting commerce. TCU is a business that does business in the State of Texas and received federal funds to operate. This

Defendant may be served with citation by serving Christopher M. Del Conte at Texas Christian University, Department of Athletics, 2800 S. University Drive, Fort Worth, Texas 76129.

0.       Upon information and belief, Defendant TRENT JOHNSON (hereinafter "Johnson") is the head men's basketball coach at TCU.  TCU is a private higher learning institution in Texas. TCU is engaged in commerce or in an industry or activity affecting commerce.  TCU is a business that does business in the State of Texas and received federal funds to operate.  This Defendant may be served with citation by serving Trent Johnson at Texas Christian University; Men's Basketball, 2800 S. University Drive, Fort Worth, Texas 76129.

### III. JURISDICTION AND VENUE

9.       This action is an action for declaratory relief authorized by **28 U.S.C. § 2201** .  This Court has jurisdiction over the Plaintiff's federal claims under **28 U.S.C. § 1331** because this action involves a question of the application of the due process provisions, and equal protection provisions of the Fourteenth Amendment, Section 1, to the United States Constitution.

10.       Venue is proper in the U.S. District Court for the Northern District of Texas, pursuant to **28 U.S.C. § 1391(b)(2)** because the majority of all of the events giving rise to this suit took place in the judicial district of the Northern District of Texas.  Also, the Plaintiff resides in the Northern District of Texas.

### IV. NATURE OF THE CASE

10.       BROWN has been a dual sport athlete since he began playing sports at 4 years old.  As a youth, he led his youth basketball team, the DeSoto Hornets, to a TAAF(Texas Amateur Athletic Federation) state championship in 2001 and a state runner-up, or second place finish, in 2001as a

"2-Guard", or shooting guard. Also in 2001, BROWN led his youth basketball team the national

final four, and a fourth place finish, in the AAU(Amateur Athletic Union) National

Championship, and a 10th place finish in 2002 as a "2-Guard". In football as a youth, BROWN

led his team to numerous city league championships and "Super-bowl" appearances as a

quarterback. In middle school, BROWN led his middle school football team to 2 undefeated

seasons en route to 2 City Championships in the Dallas Independent School District which is a

hotbed for college recruiters. In high school, BROWN excelled in football, basketball, and track

and field. In football, BROWN was undefeated as a quarterback in the ninth and tenth grades as

a starting quarterback and led Dallas Skyline High School, a perennial power in football, to a JV

district championship in football. In basketball, BROWN was the leading scorer on his ninth

grade basketball team but was forced to try out for, and wrongfully cut from, the basketball team

after his older brother, a senior top rated, and highly recruited, basketball player in Texas,

transferred to another school during the Fall of BROWN's tenth grade year.

11.      As a result, BROWN ultimately transferred to Dallas Bryan Adams High School where

he was allowed to participate in athletics. As a senior at Dallas Bryan Adams High School,

BROWN excelled in football, basketball, and track and field. In football, BROWN was voted

first-team all-district in football and basketball and he qualified for, and participated in, the

regional track meet in the triple jump. He was also selected as the Dallas Morning News Player

of the Week in 2014 in football for throwing a school record 6 touchdown passes in one game.

He was nominated for the Dallas Morning News Player of the Year as well in 2014. Prior to

BROWN's senior season as Dallas Bryan Adams High School, BROWN was notified by the

TCU football coaching staff that he was being recruited as a quarterback at TCU. Due to his

small stature, BROWN was not offered a football scholarship at TCU. After making it known to

all recruiting him that he wanted to pursue playing quarterback, and only quarterback, in college, BROWN was offered, and accepted, an athletic scholarship, plus other grants that exceeded the cost of attendance, to play football at Texas A&M Commerce.

12.     After 2 academic years at Texas A&M Commerce, TCU compelled BROWN to transfer to TCU and to change his sport from football to basketball promising BROWN immediate membership on the men's basketball team, full participation in men's basketball with all rights and privileges, and the opportunity to compete against other members of the men's basketball team in 2015-2016 should BROWN be unsuccessful in his petition to the NCAA for a special circumstances waiver for immediate eligibility in men's basketball for the 2014-2015 academic year. All BROWN had to do prior to accepting TCU's offer was to agree to not play football at TCU. BROWN agreed and was immediately placed on the men's basketball team at TCU.

13.     Upon BROWN's transfer to TCU, after voluntarily forfeiting his full grant-in-aid to attend Texas A&M Commerce, TCU failed to honor it's agreement with BROWN. BROWN was denied full participation, with all rights and privileges, in men's basketball after BROWN formally requested a written decision from the TCU Men's Basketball Head Coach, Defendant JOHNSON, regarding whether or not Johnson would give the approval to the TCU Compliance Office to request a special circumstances waiver from the NCAA on BROWN's behalf. After requesting the formal decision form JOHNSON, BROWN was punished by isolating and separating BROWN from the other members of the team, repeatedly publicly humiliating, harassing, and retaliating against BROWN, and ultimately kicking BROWN off of the team  and attempting to kick him off of the entire TCU campus even though BROWN had not violated any team rules, TCU code of conduct, or any local, state, or federal laws.

14.     With this petition, BROWN is seeking declaratory judgment indicating, in part, that  (1) TCU and BROWN agreed that BROWN would receive full membership, with all rights and privileges afforded to the other members of the men's basketball team, in exchange for BROWN agreeing to give up football completely and to never even attempt to play football at TCU, (2) TCU breached the agreement to afford BROWN full membership, with all rights and privileges, on the men's basketball team for the 2014-2015 academic year, (3) BROWN is entitled to seek reinstatement under grievance policy outlined in the 2014-2015 Student-Athlete Handbook & Planner, (4) and that TCU breached the "Housing License" entered into with BROWN last Spring regarding housing on campus for the 2015-2016 academic year.

## V.  FACTUAL BACKGROUND

15.     The Plaintiff, Joshua Brown, has been an exceptional, outstanding, basketball player virtually his entire life.  As a youth, BROWN led his team to two straight TAAF State Tournament finals, winning the first one, and to two straight AAU National Tournaments finishing fourth, and tenth respectively.  The Plaintiff's teams as a youth were coached by his father, Basil Brown, who developed several youth players into top national basketball recruits. Bakari Turner, Daniel Skinner, Jamison Sterns, and Marcus Smart are just a few of the players, who were outstanding college players, who were coached by Basil Brown as youths with Marcus Smart being a lottery pick in the 2014 NBA draft.

16.     In high school, BROWN was an outstanding dual sport athlete at Dallas Bryan Adams High School receiving first team all-district honors in both football and basketball as a senior and qualifying for, and competing in, the regional track meet in the triple jump.  BROWN the honor of Dallas Morning News player of the week his senior season in football for throwing a school-

record six touchdown passes in one game. BROWN was also nominated for Dallas Morning News player of the year. Lastly, BROWN was voted offensive MVP in football and team MVP in Basketball at Dallas Bryan Adams High School for his senior season. BROWN is a leader and a proven winner who was a member of the National Honor Society in high school and received numerous academic achievement awards in high school, and as a youth, culminating in BROWN winning the Dallas Independent School District Mathematics competition in middle school.

17.  In May of 2011, BROWN was notified by TCU that he was being recruited by TCU to play football. During his senior season at Dallas Bryan Adams High School, BROWN attended numerous TCU home football games as an invited guest of the TCU football team headed by then, and current, head coach Gary Patterson. In the Fall of 2011, BROWN was notified by TCU that he would not be offered an football scholarship from TCU because he was to small in stature and not quite tall enough. Brown was approximately 6'2 1/2" and 175 pounds.

18.  In February of 2012, BROWN signed a national letter of intent as a quarterback to play football at Texas A&M Commerce. BROWN received a full grant-in-aid to attend Texas A&M Commerce. BROWN was redshirted his freshman season and was the starting holder for field goals his sophomore season.

19.  In the Fall of 2012, BROWN was 6'4" and 190 pounds when he entered college.

20.  In early August of 2015, BROWN sought, and received, a release from Texas A&M Commerce to transfer.

21.  On approximately August 12, 2015, BROWN decided to play basketball at his new school as opposed to football.

22.     On August 12, 2014, BROWN and his father personally appeared at TCU basketball and requested to speak with JOHNSON.  BROWN was unable to speak with JOHNSON but was put in contact with one of the assistant coaches, Chris Tifft. Chris Tifft instructed BROWN to send game video of BROWN playing basketball to TCU and instructed BROWN to apply to TCU.

23.     On August 12, 2014, during the meeting with Tifft, Tifft informed BROWN and his father that BROWN would have to sit out the 2014-2015 academic year if the transferred to TCU.  At that point BROWN and his father informed Tifft that the Browns believed that BROWN would be entitled to a waiver for immediate eligibility should BROWN transfer to TCU because of improper treatment BROWN received while a student-athlete at Texas A&M Commerce.  Tifft informed BROWN and his father that TCU would file a request for a waiver with the NCAA if BROWN could show that he was entitled to a waiver.

24.     Subsequent to August 12, and before August 22, 2014, BROWN submitted game video of BROWN playing basketball to TCU and applied to TCU.

25.     On August 15, 2014, BROWN was accepted to TCU.

26.     On approximately August 21, 2014, Chris Tifft,  called BROWN and told him that the TCU basketball coaches loved BROWN's video and that he had some good news.  Tifft informed BROWN that BROWN would be immediately placed on the men's basketball team at TCU and would become a member of the team with full rights and privileges if BROWN agreed not to play football ever again.  BROWN agreed.  Tifft then instructed BROWN to appear at TCU on the morning of August 24, 2014 to take a physical administered by the TCU training staff and to then appear at TCU later in evening on August 24, 2015 for a "meet the frogs basketball team" event.  BROWN agreed to come to both events.

27.     On the morning of August 24, 2014, BROWN, his dad, mom, and both sisters, appeared at TCU to take physical. Josh was weighed at 200 and measured at 6'7" by TCU athletic trainer.

28.     On approximately August 24, 2014, after taking the physical and driving home with family, Tifft called and asked BROWN if he drove and how he would get to event. BROWN told Tifft that he didn't drive and that his parents would bring him. At that point, Tifft told BROWN that he could not come to the "Meet the Frogs" event because he had not completed his enrollment yet.

29.     On August 25, 2014, BROWN was enrolled at TCU, and was assigned a room in athletic "dorm" with two football players and one track athlete after housing office called Tifft and confirmed that BROWN was an athlete on the men's basketball team.

30.     Between August 25, and August 29, 2014, Tifft called BROWN's dad and asked what happened at Texas State University with BROWN's brother. BROWN's father told Tifft that it wasn't fair to BROWN to speak about brother's situation because they are 2 different people and that BROWN's brother was treated unfairly at Texas State University when Texas State University took an adverse action against BROWN's brother and failed to provide BROWN's brother an appeal hearing even though a timely appeal had been filed by BROWN's brother.

31.     On September 4, 2014, TCU men's basketball team took it's team picture. As the team was coming out of dressing room to take picture, BROWN was stopped by team manager and told that he could not take the picture and to come back in about 20 minutes to take an individual picture.

32.     On approximately September 18, 2014, BROWN's father contacted the NCAA and discussed the requirements for a special circumstances waiver for immediate eligibility. After discussing some specifics about BROWN's situation at Texas A&M Commerce, the NCAA representative informed BROWN's father that it was highly likely that BROWN's situation qualified BROWN to seek a special circumstances waive for immediate eligibility at TCU and to contact TCU for further instructions.

33.     On September 19, 2014, BROWN's father called and spoke with Ike Ukaebgu, Assistant Athletic Director for Compliance, at TCU. After speaking with Mr. Ukaebgu, BROWN's father was instructed to send a letter, and supporting documents, formally requesting a special circumstances waiver for immediate eligibility at TCU in men's basketball.

34.     On September 19, 2014, BROWN's father sent a letter, and supporting documents, to Ike Ukaebgu, Assistant Athletic Director for Compliance, at TCU formally requesting a special circumstances waiver for immediate eligibility for BROWN at TCU in men's basketball.

35.     On September 22, 2014, Ike Ukaebgu sent BROWN's father an email stating that JOHNSON said no on BROWN's waiver request.

36.     On September 22, 2014, BROWN's father sent Ike Ukaebgu an email requesting an explanation as to why JOHNSON was declining to file waiver for BROWN.

37.     On September 26, 2014, Ukaebgu responded to BROWN's father request for explanation as to why basketball office declined to file waiver by saying that BROWN had indeed been given an appeal at Texas A&M Commerce and TCU would have a strong case for a waiver if BROWN had not been provided with an appeal at Texas A&M Commerce.

38.     On September 26, 2014, BROWN's dad responded to Ukaebgu that BROWN was not afforded an appeal *hearing* and that NCAA rules require *a hearing* and not just an appeal.

39.     On September 26, 2014, after reviewing the supporting documents provided by BROWN's father on September 19, 2014, Ukaebgu responded and said father was correct and that Texas A&M Commerce did indeed violate NCAA rules by failing to provide BROWN an appeal *hearing* and that BROWN had not had an appeal and that he would file a waiver but he had to have approval from men's basketball.

40.     Subsequent to September 26, 2014, TCU posted it's men's basketball roster on its website, and the worldwide web, and BROWN was left off of the roster.  BROWN complained to Chris Tifft.

41.     On approximately October 1, 2014, TCU posted a revised roster to its website, and the worldwide web, in which BROWN was included the roster.  However, the bio on TCU's website referred to BROWN as a walk-on, listed BROWN as 6'4" and 190 pounds, and was identical to BROWN's football bio in the Texas A&M Commerce media guide.

42.     Nobody at TCU ever talked to BROWN about BROWN's bio before publishing a bio for BROWN on the TCU website and the worldwide web.

43.     On October 3, 2014, BROWN wore a TCU basketball hat into men's basketball conference room, a TCU assistant Coach, Quanza Johnson told BROWN "you can't wear hats back here" and confiscated BROWN's hat.  BROWN went back about a month later and Quanza Johnson told BROWN that he would let BROWN know when he could get his hat back.  As of October 19, 2015, BROWN still has not gotten his hat back.

44.     On October 3, 2014 through October 5, 2014, the team went on a retreat at Dry Ranch. At one of the practices during the retreat, JOHNSON reached in his pocket, retrieved all of the bills from his pocket, threw the bills on the floor, and said that the winner of the competition would be awarded the money, from his pocket, on the floor.  When the competition got down to only three players, in which BROWN was still included in the competition for the money, JOHNSON came to BROWN and kicked BROWN out of the competition citing that BROWN could no longer participate in the competition because BROWN was ineligible. Kenrich Williams won the competition and took all of the money.

45.     Subsequent to October 1, and before October 8, BROWN complained to Matt Hoover, assistant director of media relations at TCU, about BROWN being referred to as a walk-on, his height being listed at 6'4", weight being listed at 190 pounds and about his bio not being updated from his previous college in BROWN's bio on the TCU website, even though no other player on the TCU roster was referred to as a walk-on and all other players heights and weights were not materially different from their actual heights and weights.

46.     On October 6, 2014 BROWN ran into JOHNSON on the gym floor before a practice and talked to JOHNSON about JOHNSON authorizing Ike Ukaebgu in compliance to file a waiver for BROWN. JOHNSON said that " he was on the waiver committee and that he had just filed a waiver for another player last season and he wasn't sure if he wanted to file another one" and that he would get back to BROWN.

47.     On October 10, 2014, Chris Tifft called BROWN's father and said "this is not going to work, Josh is complaining about everything and you are calling people at TCU instead of calling me, and that no other player at TCU cares about this stuff, they could care less what their height

Plaintiff's Original Petition for Declaratory Relief
13 of 31

or weight are listed as". BROWN's father told Tift that there would have been no reason for BROWN, or anyone else in BROWN's family, to call anyone at TCU if this stuff had been done accurately the first time, that BROWN's height and weight were important to him because BROWN had been labeled as undersized virtually his entire life before now, and that it is our family's religious belief that we must go directly to the source first when we are having a problem.

48.     Subsequent to October 10, 2014, the season started. For the first game, BROWN did not ride the bus to the shoot around because he had class related things to do. For the second game, on the evening of November 14, 2014, BROWN did ride the bus to Wilkerson Greines for the shoot around. For the second game BROWN rode the bus back to campus after the shoot around. For the first two games BROWN had had pre-game meal, rode the bus to Wilkerson Greines for the pre-game, was in the locker room for pre-game, was on the floor during the pre-game, on the bench to start game, in the locker-room at half-time, back on the bench after half-time, in the locker room after the game, and back on the bus to travel back to TCU campus after the game.

49.     On November 14, 2014 at approximately 3:00 a.m., BROWN sent a formal request to JOHNSON requesting a written decision on whether, or not, men's basketball would approve for a waiver for immediate eligibility to be filed with the NCAA by TCU compliance office on BROWN's behalf.

50.     On the morning of November 15, 2014, JOHNSON requested a meeting with BROWN regarding BROWN's letter sent to him on November 14, 2014 requesting approval from TCU

men's basketball for a waiver for immediate eligibility to be filed on BROWN's behalf by TCU compliance. **THIS IS THE FIRST EVER MEETING WITH JOHNSON BY BROWN!!!**

The meeting only lasted approximately 2 minutes. JOHNSON read the letter, asked BROWN if he felt that he was being mistreated, BROWN felt pressured to answer "no" because he didn't want a problem with JOHNSON. JOHNSON then asked BROWN if he wrote the letter. BROWN answered that he was aware of contents of letter but he did not actually write the final version of it. JOHNSON then instructed BROWN to get his dad on the phone to schedule a meeting for later that day. BROWN went in the copy machine room and called his dad. BROWN's dad said he couldn't make it later that evening. Meeting was scheduled for the following evening of November 16, 2014.

51.      On November 15, 2014, as the meeting with JOHNSON was concluding, JOHNSON informed BROWN that BROWN would not be allowed to attend a team function held on the TCU campus, in the Bluu, later that day where the men's basketball team was interacting, and dancing around, with several kids.

52.      On the evening of November 16, 2014, BROWN, his mom and his dad, appeared at the conference room at TCU basketball to meet with JOHNSON. **THIS IS THE FIRST EVER, AND ONLY, MEETING, OR CONVERSATION OF ANY KIND, BETWEEN BROWN's DAD OR MOM AND TRENT JOHNSON.** At the Meeting, JOHNSON said (1) he was on the committee for waivers,(2) he rarely talks to parents, (3) he left home at 17 and didn't speak to his mom but twice for years after leaving home, (4) that BROWN needed to speak for himself, (5) that he wasn't going to approve the filing of a waiver, (6) that if he heard anything else about a waiver he would immediately kick BROWN off of the team, (7) that If he heard from

BROWN's mom or dad again about anything he would kick BROWN off of the team,  and (8)

that he was not a dream breaker and that BROWN would get his opportunity to fulfill his dream

of playing basketball at TCU if these conditions were met.

53.    On November 17, 2014, TCU had a home game at Wilkerson Greines.  BROWN didn't

go to the shoot around because he had class.  However, BROWN was on the team bus waiting

for the bus to leave to go to Wilkerson Greines at 5:00 p.m. for the game when Coach Tifft got

on the bus and instructed BROWN to get off of the bus.  As BROWN was getting off of the bus,

Tifft ordered BROWN to go back on the team bus and get all of his things.  Tifft then told

BROWN that "Coach Trent Johnson is upset with you, when he sees your face it reminds him of

having to meet with your parents about the waiver, and for that, he doesn't want you around the

team, or him, as much as possible for now until the situation cools off so you won't be able to

ride the bus to the game with us but you will still be able to sit on the bench with the team and go

into the locker room and everything".  BROWN went back to his dorm.

54.    On November 17, 2014, at about 6:00 p.m., BROWN got a ride to Wilkerson Greines

with a former player.  When BROWN arrived to the game and attempted to come onto the

basketball floor to sit on the bench with the team during the game, Tifft approached BROWN

and said "I know I told you that you could sit on the bench but it would just be best if you sit in

the stands for now".  BROWN sat in the stands for that game and was not allowed to go into the

locker room.

55.    Approximately every couple of weeks after BROWN was removed from the bus by

JOHNSON, Tifft would come up to BROWN before, or after, practice and tell BROWN to hang

in there and this would be over soon and BROWN would be able to rejoin the team on the bus, at games, and at team functions.

56.     For the remainder of the 2014-2015 men's basketball season, BROWN was never allowed to rejoin the team at team functions and was never again allowed to ride the team bus.

57.     Over the Christmas break, the team was on campus while all other students were home with their families. There was a dinner with TCU boosters. BROWN was told by Matt Reid, basketball operations, that JOHNSON was barring BROWN from attending the dinner. When BROWN asked for meal money to eat dinner that evening, Reid informed BROWN that BROWN could not get money to eat dinner because none of the other players were given money to eat dinner and that TCU can't give money to just one player. BROWN then asked how he was going to eat, Reid said he would have to call BROWN back. Reid called BROWN back and said "because we are feeding y'all tonight we can't give you money". When BROWN asked how he was going to eat, Reid responded by saying "you have to make it on your own".

58.     In March of 2015, after season ended in Big XII tournament, the team took one week off and was scheduled to begin Spring workouts.

59.     On Sunday night of March 23, 2015, BROWN texted the strength coach and asked if the team had weights the following day. The strength coach texted BROWN back and said "I was told you are not lifting with the guys, I am not sure why".

60.     On Monday March 23, 2015, BROWN texted Tifft and asked why he was not lifting with the team. Later in that day, Tifft called BROWN and said "Trent Johnson doesn't want you

around the team until he meets with you".   Tifft kept giving Josh dates that JOHNSON was going to meet with BROWN.  Then Tifft kept pushing the dates back.

61.     In approximately early April of 2015, BROWN was contacted by a member of the TCU men's basketball personnel and ordered to provide men's basketball with BROWN's user name and password to BROWN's TCU student portal, and email in which men's basketball used to log onto BROWN's student portal and email, pretending to be BROWN, and wrote and submitted an email in BROWN's name requesting changes to the dorm assignment originally issued to, and contractually agreed to by, BROWN by TCU Housing.

62.     On April 11, 2015, men's basketball team had Basketball banquet.  BROWN was directed to sit at table with only BROWN's immediate family in the back corner of the room while all other men's players at TCU were seated at tables with boosters and other team supporters.

63.     On April 14, 2015, Tifft called BROWN to his office and said "We are reducing the roster and we are not having you back next year so if it's anything in your locker that you want you need to go and get it out now".  He went on to say "I'm sure you are going to go and talk to your dad about it and he can call me if he needs to".

64.     On April 15, 2015, BROWN went back to Tifft's office and asked what the appeal process to such was.  Tifft responded by saying that there was no appeal process for such and that BROWN could not appeal the decision to kick him off of the team.

65.     On May 25, 2015 BROWN and his dad drove to TCU for a meeting with DEL CONTE about BROWN being unfairly kicked off of team and seeking a written explanation as to why.

DEL CONTE informed BROWN, and BROWN's father, that there was no appeal of JOHNSON's decision to kick BROWN off of men's basketball team at TCU and that JOHNSON didn't have to give a written explanation.   DEL CONTE went on to say that his "coaches" can do whatever they want to a player and it is nothing that the player can do about it.   BROWN's father then asked DEL CONTE what could be done if decision to kick a player off of team constitutes discrimination or retaliation.   DEL CONTE initially said it didn't matter.   Then he said something would be done but reinstatement to the team for the player was not an option. DEL CONTE then informed BROWN, and his father, that BROWN would receive a written explanation as to why BROWN was kicked off of the team.

66.     On June 10, 2015, DEL CONTE, and not JOHNSON, submitted an letter to BROWN informing BROWN that BROWN was kicked off of the men's basketball team at TCU due to JOHNSON wishing to reduce is roster by one player.

67.     On August 17, 2015, BROWN formally filed a grievance pursuant to the 2014-2015 Student-Athlete Handbook seeking reinstatement to the men's basketball team alleging that JOHNSON's true reason for kicking BROWN off of the team is retaliation for BROWN writing a letter seeking a written decision, and explanation, from JOHNSON as to whether or not JOHNSON would approve for a waiver to be filed by TCU compliance office on BROWN's behalf.

68.     On August 19, 2015, BROWN appeared at TCU on "move-in-day" and attempted to move into the dorm assigned to him by TCU Housing in March of 2015.  On August 19, 2015, BROWN was informed by housing that the dorm room assigned to him had been "cancelled by

athletics" and that there was no room assignment for BROWN causing BROWN to be forced to return home.

69.     On August 19, 2015, BROWN reported the fact that his dorm room had been cancelled by athletics to the DEL CONTE.

70.     On August 20, 2015, BROWN submitted a FERPA request to TCU requesting the video of all of the practices at the Dry Ranch in early October of 2014.  As of October 20, 2014, TCU has refused to provide BROWN with the videos even though the lawful time for complying with BROWN's request has passed and even though BROWN is lawfully entitled to such videos pursuant to FERPA.

71.     On August 21, 2015, DEL CONTE submitted an email to BROWN stating that BROWN's would be provided with a dorm by the end of the day.

72.     On August 24, 2015, TCU Housing submitted an email to BROWN asking why BROWN had not checked in his dorm and issued ultimatum to BROWN to either check into the dorm assigned to him by 5:00 p.m. on Tuesday, August 25, 2015, or the room would be assigned to another student.

73.     On August 24, 2015, BROWN went by the dorm room assigned to him and realized that the room assigned to him was not the room originally assigned to him and was not even in the same dorm that was originally assigned to him.  The new room did not have any of the amenities that were in the original dorm assigned to him and wrongfully "cancelled by Athletics".

74.     On August 24, 2015, BROWN, and his father, traveled from home and appeared at TCU for grievance hearing with JOHNSON on BROWN's grievance seeking reinstatement to the

men's basketball team.  The entire "hearing" lasted only approximately ten minutes with

JOHNSON refusing to discuss any of the issues outlined in BROWN's grievance and refusing to

even allow BROWN to mention any of the issues during the meeting stating that he had already

read the issues.  BROWN began the hearing by reading his first issue.  After reading the first

issue, JOHNSON said "next issue".  Then, BROWN asked JOHNSON if he was going to even

discuss the issued in his grievance.  JOHNSON said "no".  JOHNSON went on to say "those

things in there will not cause you to be reinstated to this team".  JOHNSON then looked at

BROWN's dad and said "I would instruct any kid of mine to immediately leave a program if any

of the things listed in there(grievance) was happening to my them".  BROWN's father then asked

JOHNSON if JOHNSON would honor a ruling, or decision, in this grievance reinstating

BROWN to the TCU men's basketball team.  JOHNSON responded "No".  JOHNSON then

began to say that the TCU men's basketball team needed to get better to be more competitive in

the Big XII Conference and that BROWN was removed from the team so that the team could get

better.  BROWN then stated "so now you're saying that I'm the worst player on the team".

JOHNSON responded and said "no you were not the worst player on the team".  BROWN's

father then responded and said "then why are you kicking him (BROWN) off of the team?".

JOHNSON did not respond.

75.     On August 25, 2015, BROWN wrote a letter to JOHNSON complaining that JOHNSON

did not conduct the hearing properly as there was no good-faith effort to have any meaningful

discussions on the part of JOHNSON over the issues to try to resolve any of the issued listed in

BROWN's grievance.

76.     Subsequent to August 25, 2014, JOHNSON submitted a response to BROWN's August

25, 2015 letter stating that I did indeed present all issues in my grievance to him during the

grievance and that I was kicked off of the team because my athletic ability was not good enough to compete at this level. This was the first time ever that JOHNSON had ever made such a statement to BROWN.

77.     On August 25, 2015, BROWN moved into the dorm assigned to him under protest.

78.     On September 9, 2015, BROWN met with the Associate Athletic Director at TCU, Mr. Jack Hesselbrock, in the second stage of his grievance seeing reinstatement to the men's basketball team. The hearing lasted approximately two hours and BROWN was allowed to present his appeal to Mr. Hesselbrock.

79.     On September 20, 2015, Mr. Hesselbrock denied BROWN's appeal citing that "head coaches have the authority to determine the roster for their respective teams as they believe is in the best interests of their program".

80.     On September 22, 2015, based upon DEL CONTE's view that reinstatement to a team can't be sought in a grievance, BROWN submitted a letter to DEL CONTE asking DEL CONTE to recuse himself from the next level of BROWN's grievance seeing reinstatement to the men's basketball team.

81.     On September 23, 2015, DEL CONTE denied BROWN's request for DEL CONTE to recuse himself from the next level of BROWN appeal in BROWN's grievance seeking reinstatement to the men's basketball team.

82.     On September 28, 2015, BROWN submitted a letter to the TCU Chancellor, BOSCHINI, asking BOSCHINI, to issue and "executive order" recusing DEL CONTE from BROWN's grievance seeing reinstatement to the men's basketball team. BROWN's request was denied.

83.     At no point during the 2014-2015 academic year did JOHNSON, or any other member of the men's basketball team at TCU,  ever communicate to BROWN any evaluation of BROWN's athletic ability to BROWN even though JOHNSON did indeed provide such information to all other members of the men's basketball team at various points during the 2014-2015 academic year and season.

84.     At no point during the last academic year did JOHNSON, or any other member of the TCU men's basketball team, ever meet with BROWN for the purpose of providing BROWN with a player evaluation.

85.     BROWN is a higher rated, or graded, player than Dalton Dry.  Dalton Dry, who is white, was never graded to be a division I basketball player.  BROWN is taller, faster, and stronger, than Dalton Dry.  BROWN's skillset, and/or ability, is of a much higher grade than Dalton Dry. BROWN is qualified to be a member of the TCU basketball team than Dalton Dry.

86.     In relation to the other players on the team, BROWN is the strongest player on the team with the possible exception of one other player.  BROWN is faster, taller, and can jump higher than the majority of players on the entire team.  BROWN is a better shooter than the majority of players on the team.

## CLAIMS

## VI.  DISCRIMINATION

87.     Plaintiff hereby incorporate paragraphs 10 through14 in Section IV above and paragraphs 15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth at length herein.  The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY

BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT JOHNSON, and other unknown individuals, hereinafter referred to as Defendants, as above described, singularly or in combination with others, constitute **discrimination** when the Defendants discriminated against BROWN, based upon BROWN's race, by removing BROWN from the team based upon and alleged arbitrary roster reduction, or based upon ability as a basketball player, before removing Dalton Dry from the team because BROWN is more qualified than Dry as a basketball player. The only reason Dry was not removed, as opposed to BROWN, was because he was white. Dalton Dry is considered to be the worst player on the team among the players.

88.     TCU discriminated against BROWN, based upon BROWN's religion, by retaliating against BROWN by creating a hostile education environment for BROWN in men's basketball by punishing BROWN for going directly to the source at TCU when BROWN had a problem. However, it is BROWN's religious belief to do such as God himself mandated such for any person having a problem in the Bible.

## VII.  FAIR HOUSING ACT

89.     Plaintiff hereby incorporate paragraphs 10 through14 in Section IV above and paragraphs 15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth at length herein. The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT JOHNSON, and other unknown individuals, hereinafter referred to as Defendants, as above

described, singularly or in combination with others, constitute a violation of The Fair Housing Act when the Defendants failed to afford BROWN the housing that he was originally assigned and failed to notify BROWN in a timely manner that his housing had been cancelled thereby rendering BROWN without a dorm room at the start of classes for the 2015-2016 academic year. Also, BROWN was denied of his right to "use and enjoy a dwelling" under the Fair Housing Act when BROWN was not allowed to access the dorm room that he was assigned until a final decision had been rendered on his grievance to reinstate him to the men's basketball team.

90.     TCU violated the Fair Housing Act when the room that was ultimately provided to BROWN was not comparable to the BROWN's original room assignment.

91.     TCU violated the Fair Housing Act when TCU committed fraud to cancel BROWN's original room assignment.  In April of 2015, men's basketball wrongfully obtained BROWN's user name and password to BROWN's TCU student portal account, and email, to fraudulently write a letter to housing, while impersonating BROWN, seeking changes to the room assignment originally issued to BROWN by TCU HOUSING while knowing that the intent of men's basketball was to cancel BROWN original room assignment.

## VII.  CONSTITUTIONAL RIGHT TO PRIVACY

92.     Plaintiff hereby incorporate paragraphs 10 through14 in Section IV above and paragraphs 15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth at length herein.  The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT JOHNSON, and other unknown individuals, hereinafter  referred to as Defendants, as above

described, singularly or in combination with others, constitute a violation of BROWN's

constitutional right to privacy when the Defendants wrongfully obtained BROWN's user name

and password to BROWN's TCU student portal account, and email, to fraudulently write a letter

to housing, while impersonating BROWN, seeking changes to the room assignment originally

issued to BROWN by TCU Housing while knowing that the intent of men's basketball was to

cancel BROWN original room assignment altogether.

## VIII.  RETALIATION

93.     Plaintiff hereby incorporate paragraphs 10 through14 in Section IV above and paragraphs

15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth

at length herein.  The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY

BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER

III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT

JOHNSON, and other unknown individuals, hereinafter referred to as Defendants, as above

described, singularly or in combination with others, constitute **retaliation** when the Defendants

severely punished BROWN for formally requesting a decision from JOHNSON as to whether or

not JOHNSON would approve TCU compliance to apply for a special circumstances waiver for

immediate eligibility for BROWN and an explanation if a decision was made not to approve a

waiver.  After submitting his formal letter on November 14, 2014, BROWN was isolated and

separated from the team.  He was no longer allowed to sit on bench with the team during games

or go into the team locker room at any point before, during, or after, games.  He was not allowed

to attend team functions.  And ultimately, BROWN was kicked off of the team after the season

ended.

## IX.  TCU STUDENT-ATHLETE GRIEVANCE POLICY

94.     Plaintiff hereby incorporate paragraphs 10 through14 in Section IV above and paragraphs

15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth

at length herein.  The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY

BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER

III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT

JOHNSON, and other unknown individuals, hereinafter referred to as Defendants, as above

described, singularly or in combination with others, constitute a violation of the TCU Student-

Athlete Grievance Policy when the Defendants failed to follow the grievance policy as it pertains

to BROWN's grievance seeing reinstatement to the men's basketball team.  According to the

Defendants, only the head coach can reinstate a player to a team at TCU.  Because of this belief,

the Defendants failed to enter into good-faith meaningful discussions with BROWN in an effort

to determine whether or not BROWN has met the burden, in his grievance, for a ruling in his

favor to reinstate him to the men's basketball team.  As a result, the men's head coach,

JOHNSON, knowing the position of TCU Athletics that only a head coach can reinstate a player

to a team, has refused to allow any meaningful discussion with BROWN in hearing on

BROWN's grievance seeing reinstatement to the men's basketball team.

95.     The TCU Athletic Department's interpretation of the Student-Athlete Grievance Policy is

unfounded.  The grievance policy does not bar a grievance seeking reinstatement to a team at

TCU in no way, shape, or fashion.  As a result, BROWN's grievance seeking reinstatement must

be allowed and fair, impartial hearings must be conducted by TCU personnel.  And lastly, if

BROWN can show that reinstatement to the men's basketball is warranted, reinstatement must

be ordered pursuant to the TCU Student-Athlete grievance policy.

## X. BREACH OF CONTRACT

96.     Plaintiff hereby incorporate paragraphs 10 through 14 in Section IV above and paragraphs 15 through 86 in Section V above in this Petition in this count by reference as fully as if set forth at length herein.  The actions and omissions of Defendants TEXAS CHRISTIAN UNIVERSITY BOARD OF TRUSTEES, TEXAS CHRISTIAN UNIVERSITY, CLARENCE SCHARBAUER III, VICTOR BOSCHINI, CRAIG ALLEN, CHRISTOPHER DEL CONTE, TRENT JOHNSON, and other unknown individuals, hereinafter referred to as Defendants, as above described, singularly or in combination with others, **constitute breach of contract** when the Defendants (1) lured BROWN to TCU with a promise that he would be a member of the men's basketball team with full rights and privileges for the 2014-2015 academic year, and basketball season, only to renege on that promise by repeatedly isolating, and separating, BROWN from the team, and treating him adversely different from all other members of the team without any reason legitimate reason as to why.

## XI. JURY DEMAND

159.    Demand is hereby made for a jury to decide all fact issues of this case.

## XII.  JOINT AND SEVERAL LIABILITY

160.    Liability of each of the Defendants is joint and several.

## XXII. REQUEST FOR RELIEF

161.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer and answer herein, and that upon final trial, Plaintiff have and recover the following relief against the Defendants:

Plaintiff's Original Petition for Declaratory Relief
28 of 31

1.      Joshua Brown is lawfully entitled to the room originally assigned to him by TCU Housing.

2.      Trent Johnson violated Joshua Brown's right to privacy when men's basketball asked Joshua Brown for his user name and password to the TCU student portal and email.

3.      Joshua Brown had a right to request a special circumstances waiver for immediate eligibility at TCU whether Trent Johnson felt that Brown could help the team or not.

4.      Joshua Brown had a right to request a written decision on special circumstances waiver for immediate eligibility from Trent Johnson without being punished by Trent Johnson.

5.      Joshua Brown is entitled to seek reinstatement to the men's basketball team pursuant to the grievance policy outlined in the 2014-2015 TCU Student-Athlete Handbook.

6.      The Head Coach, the Associate Athletic Director, or the Athletic Director all have the authority to issue a binding ruling reinstating BROWN to the men's basketball team at TCU pursuant to the grievance policy outlined in the 2014-2015 TCU Student-Athlete Handbook.

7.      The TCU Student Life Appeals Committee has the authority to issue a binding ruling reinstating BROWN to the men's basketball team at TCU pursuant to the grievance policy outlined in the 2014-2015 TCU Student-Athlete Handbook.

8.      Trent Johnson failed to hear Joshua Brown's grievance in a manner that is in compliance with the grievance policy outlined in the 2014-2015 TCU Student-Athlete Handbook.

9.      Jack Hesselbrock's ruling on Joshua Brown's grievance to reinstate Joshua Brown to the

men's basketball team at TCU is not in compliance with the grievance policy outlined in the

2014-2015 TCU Student-Athlete Handbook.

10.     Joshua Brown has a right to impartial, unbiased, grievance hearings on his grievance to

reinstate him to the men's basketball team at TCU.

11.     Trent Johnson punished Joshua Brown for requesting a written decision on special

circumstances waiver for immediate eligibility in men's basketball at TCU.

12.     The punishment Joshua Brown received from Trent Johnson for requesting a written

decision on special circumstances waiver for immediate eligibility was excessive.

13.     Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

_____

Joshua Brown
P.O. Box 3473
Cedar Hill, Texas 75106
(469)245-8701

**Fiat**

        It is Ordered that a hearing on the Plaintiffs Petition for Declaratory Judgment is set for
o'clock on the        day of            , 2015, in the _____ sitting in Fort
Worth, Texas.

_____

HONORABLE JUDGE PRESIDING

**CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing Plaintiff's Original Petition
for Declaratory Judgment was served upon each of the Defendants in a manner that is in
compliance with the Federal Rules of Civil Procedure on October 21, 2015.

_____

Joshua Brown

Plaintiff's Original Petition for Declaratory Relief
30 of 31

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOSHUA BROWN,<br>            Plaintiff, | § |
| VS | § |
| | § |
| | § |
| TEXAS CHRISTIAN UNIVERSITY | § |
|   BOARD OF TRUSTEES, | § |
| TEXAS CHRISTIAN UNIVERSITY; | § |
| CLARENCE SCHARBAUER III, | § |
|   IN OFFICIAL CAPACITY; | § |
| VICTOR BOSCHINI, | § |
|   IN OFFICIAL CAPACITY; | § |
| CRAIG ALLEN, | § |
|   IN OFFICIAL CAPACITY; | § |
| CHRISTOPHER DEL CONTE, | § |
|   IN OFFICIAL CAPACITY; | § |
| TRENT JOHNSON, | § |
|   IN OFFICIAL CAPACITY; | § |
|            Defendants, | § |

## VERIFICATION

My name is JOSHUA BROWN.  I am a resident of Tarrant County, Texas.  I am over 18 years of age and fully competent to make this declaration.  I am a Plaintiff in this matter.  I have read the foregoing Original Petition for Declaratory Judgment and every statement contained therein is within my personal knowledge.

Joshua Brown, Plaintiff

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT** on this the 21st day of October, 2015.

Joshua Brown, Plaintiff

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Joshua Brown
P.O. Box 3473
Cedar Hill, Texas 75106

(469) 245-8701

**DEFENDANTS**
Texas Christian University, Texas Christian University Board of Trustees, Clarence Scharbauer III, Victor Boschini, Craig Allen, Christopher Del Conte, Trent Johnson

**(b)** County of Residence of First Listed Plaintiff   Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
N/A

Attorneys *(If Known)*
Not Known

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

(SOCIAL SECURITY column): ☐ 861 HIA (1395ff)  ☐ 862 Black Lung (923)  ☐ 863 DIWC/DIWW (405(g))  ☐ 864 SSID Title XVI  ☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.
Brief description of cause:
Plaintiff seeks declaratory judgment regarding grievance seeking reinstatement under University's grievance policy.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE   N/A
DOCKET NUMBER   N/A

DATE   10/21/15
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY