IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSHUA BROWN | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-791-Y |
| | § | |
| TEXAS CHRISTIAN UNIVERSITY | § | |
| BOARD OF TRUSTEES, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the Amended Motions to Dismiss (docs. 20 & 21) and the Motion to Strike (doc. 22) filed by defendant Texas Christian University ("TCU") and defendants Craig Allen, Victor Boschini, Christopher Del Conte, Trent Johnson, Clarence Scharbauer III, and the TCU Board of Trustees (collectively "Defendants"). After review of the amended complaint, the motions, the related briefs, and the applicable law, the Court concludes that the amended motions to dismiss should be and hereby are GRANTED and the motion to strike should be and hereby is DENIED.

## I.   FACTUAL BACKGROUND

TCU is a private four-year university and a Division I member of the National Collegiate Athletic Association ("NCAA"). According to plaintiff Joshua Brown, he attended Texas A&M Commerce University ("A&M Commerce"), a public four-year university where he played football.  In August 2014, Brown sought and received a release from A&M Commerce to transfer to another university.  After being released by A&M Commerce, Brown and his father contacted TCU about playing

basketball for TCU for the 2014-2015 academic year.  According to the parties, TCU did not solicit or recruit Brown to play basketball for its team.

Unable to reach the head basketball coach, Trent Johnson, Brown and his father contacted Chris Tifft, one of Johnson's assistant coaches. According to Brown, Tifft informed Brown that he would have to sit out for one year before being eligible to compete for the TCU basketball program.[1] When asked by Brown's father as to whether TCU would file a special-circumstances waiver request on behalf of Brown with the NCAA, Tifft informed the Browns that TCU would file the waiver request if Brown could provide evidence showing that he met the criteria required by the NCAA to qualify for such a waiver. If TCU filed the waiver and it were granted by the NCAA, Brown would have been immediately eligible to compete in basketball games for TCU. Brown does not state, however, whether he provided all the required evidence for the waiver to Tifft or Johnson.

According to Brown, he was admitted to TCU three days after his meeting with Tifft. Brown alleges that after he was admitted to TCU, Tifft informed Brown that he would be immediately placed on the men's basketball team with full rights and privileges.  But without the NCAA waiver, Brown would not be allowed to compete for the TCU

---

[1] NCAA Division I Bylaw 14.5.5 provides that "[a] transfer student from a four-year institution shall not be eligible for intercollegiate competition at a member institution until the student has fulfilled a residence requirement of one full academic year (two full semesters or three full quarters) at the certifying institution."

basketball team for the 2014-2015 season. Brown did not have an athletic scholarship to play basketball for TCU, nor does Brown ever allege that one was offered to him. By definition, Brown was a walk-on basketball player for TCU.[2]

Once enrolled at TCU, Brown or Brown's father made several complaints, including: Brown's not being listed on the roster; Brown's being referenced as a "walk-on"; Brown's biographical information's not being updated; and a coach's confiscating Brown's hat because Brown wore it in the basketball conference room. Brown's father also began persistently contacting the NCAA and TCU's assistant athletic director, Ike Ukaebgu, about receiving a waiver for Brown. Ukaebgu told Brown's father to send documents supporting the waiver request to Ukaebgu, but that he needed approval from Johnson to file the waiver. Ultimately, Ukaebgu informed Brown's father that Johnson said "no" to filing Brown's waiver with the NCAA. Brown then continued to complain about basketball-related issues to other members of TCU's staff. At a certain point, Tifft called Brown's father about Brown's excessive complaining and also to tell Brown's father to address his concerns with Tifft and not others at TCU. Brown's father indicated that his family's religious beliefs require them to "go directly to the source first when we are having a problem." (Pl.'s Am. Compl.

---

[2]   *See*   http://www.merriam-webster.com/dictionary/walk%E2%80%93on   (Last visited on May 24,2016) (defining "walk-on" as "a college athlete who tries to become a member of an athletic team without having been asked to join or given a scholarship.").

(doc. 17) 15.)

On November 14, 2014, Brown sent a formal letter to Johnson to request that Johnson make a decision concerning the approval of the waiver filing. On November 15, Johnson requested a meeting with Brown about the letter and its contents. Johnson asked if he wrote the letter, and Brown responded that he did not write the letter but was aware of its contents. Johnson met with Brown and his parents on November 16. At this meeting, Johnson informed the Browns that if he heard anything else about the waiver that he would kick Brown off the team. Johnson allegedly told Brown's parents not to talk to Johnson or Tifft about anything or he would kick Brown off the team. According to Brown, he was never allowed to participate in any team activities following the meeting with Johnson.

Brown alleges that in early April 2015, a member of TCU's basketball staff ordered Brown to provide his login information for access to the student portal. Brown claims that an email was sent by someone pretending to be Brown in order to request a change in Brown's dorm assignment. On April 14, Tifft informed Brown that he would not be on the TCU basketball team for the 2015–2016 season because of a reduction in the number of players on the team's roster. When Brown asked what the appeal process was, Tifft informed Brown that there was no appeal process from a decision to kick him off the team.  Brown and his father then complained to Christopher Del Conte, the athletic director, about Brown's being unfairly removed from the

team and sought a written explanation from Johnson as to why Brown was removed.  Del Conte responded by sending a letter to the Browns, stating that Johnson wished to reduce his roster by one player. According to Brown, Johnson stated that Brown was not good enough to compete at the Division I college level, but also admitted that Brown was not the worst player on the team.  According to Brown, Brown is better than one "white" player on team and this means Brown has been discriminated against by his coach, Johnson. Brown also states that the white player is related to a former TCU football coach and keeping this player on the team instead of Brown constitutes "nepotism" in violation of the law.

In August 2015, TCU informed Brown that his original dorm assignment had been cancelled by the athletic department and Brown was assigned to a different dorm room.  Brown complains that his new dorm room did not have equal amenities as compared to his original dorm room--the one he was assigned when he was a member of the basketball team. Brown contends this violates the Fair Housing Act.

Although unhappy with the results, Brown was afforded two grievance hearings. Afterward, Brown continued to complain to various TCU officials seeking reinstatement on the basketball team and requesting the video recordings of all practices held at the Dry Ranch retreat. On October 21, 2015, Brown filed a lawsuit in this Court seeking declaratory relief under the following claim headings: Discrimination; Fair Housing Act; Constitutional Right to Privacy;

Retaliation; TCU Student-Athlete Grievance Policy; and Breach of Contract. Defendants responded by filing motions to dismiss (docs. 13 & 14) under Federal Rules of Civil Procedure 12(b)(1)and (6). Brown then filed an amended complaint[3] and added additional claims under the headings: Discrimination of One; Nepotism; Harassment; Public Humiliation; and Slander and Defamation of Character. Defendants have filed amended motions to dismiss under the same rules. Accordingly, the Court must determine whether it has subject-matter jurisdiction under Rule 12(b)(1) before addressing whether Brown states a claim under Rule 12(b)(6).

## II.  Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal where the Court lacks subject-matter jurisdiction.  "Federal courts are courts of limited jurisdiction" and, as a result, "the burden

---

[3] Brown filed his amended complaint after the deadline to respond to Defendants' motions to dismiss had passed. The Court denied without prejudice the Defendants' original motions to dismiss because of the filing of Brown's amended complaint. Defendants correctly note in their motion to strike that Brown did not seek leave of court to file his amended complaint. Nevertheless, the Court will address Brown's amended complaint because the Court generally allows a plaintiff an opportunity to amend his complaint at least once before dismissal of the case. *See U.S. ex rel. Coppock v. Northrop Grumman Corp.*, No. Civ. A. 3:98-CV-2143-D, 2002 WL 1796979, at *15, n. 29 (N.D. Tex. Aug 1, 2002) (Fitzwater, J.) (noting that "this and other courts typically give a plaintiff at least one opportunity to cure pleading defects that the court has identified before dismissing the case, unless it is clear that the defect is incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal"). As a result, Defendants' motion to strike (doc. 22) is denied. Further, the Court concludes that Brown, having had an opportunity to review Defendants' motions to dismiss, has been given notice and opportunity to cure any deficiencies by amending his complaint. In fact, Brown filed his amended complaint thirty-one days after Defendants filed their amended motions to dismiss. Consequently, the Court will address the amended complaint and motions to dismiss accordingly.

of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 253 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for subject-matter jurisdiction when the Court lacks statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)(quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The first two methods are considered facial attacks on the complaint's allegations of jurisdiction, in which case all factual allegations in the complaint are taken as true. *See Chatham Condominium Assocs. v. Century Village, Inc.,* 597 F.2d 1002, 1012 (5th Cir. 1979). The latter method is considered a factual attack that challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, which allows for consideration of matters outside the pleadings, such as testimony and affidavits. *Menchaca v. Chrysler Credit Corp.*, 613 F.3d 507, 511 (5th Cir. 1980). "In general, where subject-matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has power to hear the

case." *Smith*, 756 F.3d at 347 (quoting *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004)).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)(citation omitted). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id*. Defendants challenge this Court's subject-matter jurisdiction under Rule 12(b)(1) by questioning Brown's standing as it pertains to the 2014-2015 season. Specifically, it appears the Defendants challenge Brown's standing as it relates to redressing Brown's 2014-2015 eligibility and TCU's failure to file the waiver with the NCAA on Brown's behalf.

In order to satisfy standing, the plaintiff's injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id*. at 1147. Although somewhat elastic, imminence should not "be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." Brown's injury as it pertains to the special-circumstances waiver is undoubtedly speculative. Brown assumes that the NCAA would have granted his waiver had TCU filed it. The United States Supreme Court recently noted its reluctance to expand standing theories that would require a court to guess as

to how an independent decisionmaker would exercise its judgment. *See Clapper*, 133 S.Ct at 1150 (declining "to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."). Following the logic of *Clapper*, because Brown can only speculate as to whether he would have qualified for and received the waiver, his injury is not fairly traceable to TCU's inaction. Lastly, Brown's eligibility is not redressable by this Court because the Court cannot give Brown back his eligibility for the year he transferred.[4]

Declaratory relief under 28 U.S.C. § 2201 is limited to actual cases or controversies, and Brown has failed to meet the required standing elements regarding the 2014-2015 season. Accordingly, this Court is without jurisdiction to grant Brown's requested declaratory relief as it relates to Brown's eligibility and TCU's failure to file the special-circumstances waiver for the 2014-2015 season.

Although Brown lacks standing as it relates to the special-circumstances waiver and his eligibility for the 2014-2015 season, Brown does have standing to pursue the remaining claims that relate to events surrounding that season and beyond. But Defendants have moved to dismiss the remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may

---

[4] Even if the Court were to grant Brown's requested relief and compel TCU to file this waiver, it would not guarantee the result Brown desires. Further, even if appropriate, the Court cannot compel the NCAA to do anything, as the NCAA is not a party to this suit.

be granted.

## II.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007).   The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 1955.   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).   Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading.  *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Documents a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.  *Collins*, 224 F.3d at 498-99.  "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit,

and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499. Similarly, documents of public record can be considered in ruling on a 12(b)(6) motion to dismiss. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

### III. Brown's Remaining Claims

Brown's amended complaint seeks relief under the following claim headings: Discrimination,[5] Discrimination of One, Nepotism, Fair Housing Act, Constitutional Right to Privacy, Retaliation, Harassment, Public Humiliation, Slander and Defamation of Character, TCU Student-Athlete Grievance Policy, and Breach of Contract.

First, the Court will address Brown's nepotism, harassment, and public-humiliation claims. As Defendants point out, there are no legally recognized causes of action for nepotism, harassment, or public humiliation, and Brown does not cite any authority to support these claims. Accordingly, these claims are DISMISSED.

---

[5] Brown states that Defendants have discriminated against him based on his race. He puts quotation marks around the word "white" when describing the one player on the basketball team that Brown alleges he was better than. Brown never alleges, however, what his race is or that he is a member of a protected class. And although a plaintiff is not required to plead a prima-facie case of discrimination, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), his complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11 Cir. 2004)("[W]hile *Swierkiewicz* made clear that pleading a *McDonnell Douglas* prima facie case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."). Without specifying his race or alleging that someone of a different race was treated more favorably than he was, Brown has not stated a racial-discrimination claim and his discrimination claims must be dismissed. Nevertheless, even assuming Brown is a member of a protected class, he fails to state a claim for relief in his amended complaint for reasons stated in this opinion.

Next, Brown alleges slander and defamation claims. Specifically, Brown states that Defendants' actions:

> constitute **slander and defamation of character** when the Defendants implied that BROWN is such a poor player that he must be kicked off of the team so that the team can get better when the real reason BROWN was kicked off the team is because BROWN . . . formally requested a decision from JOHNSON . . . [concerning the waiver] and an explanation if a decision was not made to approve a waiver. JOHNSON's actions makes [sic] it appear that either BROWN is the absolute worst player on the team or BROWN is being punished for committing some type of horrific act . . .

(Pl.'s Am. Compl. (doc. 17) 33.) In order to establish defamation under Texas law, a plaintiff must prove that the defendant: (1) published a statement of fact (as opposed to opinion); (2) that was defamatory concerning Plaintiff; (3) while acting with negligence regarding the truth of the statement; and (4) the statement was false.[6] *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 427 (N.D. Tex. 2010)(O'Connor, J.)(citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see also Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1151 (5th Cir. 2006). Here, Brown does not allege facts supporting any of the elements of defamation. Instead, he alleges that being cut from the team by Defendants implied that he was the worst player or that he had committed a horrific act. Brown fails to cite, and the Court is not aware, of any cases where the act of kicking someone off a team gave rise to a viable defamation claim.

---

[6] Brown alleges "Slander and Defamation of Character." Black's Law Dictionary defines slander as "[o]ral defamation; the speaking of false and malicious words concerning another, whereby injury results to his reputation." http://thelawdictionary.org/slander/ (Last visited: May 31, 2016).

If that were the case, the courts would be flooded with sports litigants. The Court recognizes that one could infer from Brown's being cut from the team that he was the worst player or that he was such a headache to the coaching staff that his removal was simply addition-by-subtraction regardless of Brown's ability.  But it is just as easy to infer a non-defamatory reason for the decision, such as the team's needing to reduce its numbers. In any event, a valid claim requires a defamatory **statement of fact**. No such statement is involved in the act of removing someone from the team.  Accordingly, the slander and defamation claims must be dismissed.

Brown also alleges that TCU failed to follow its own grievance policy. Specifically, Brown contends that Defendants failed to have "good-faith [and] meaningful discussions" with him to determine if he should have been reinstated to the basketball team. Brown alleges that

> JOHNSON, knowing the position of TCU Athletics that only a head coach can reinstate a player to a team, has refused to allow any meaningful discussion with BROWN in [the grievance] hearing . . . [for] reinstatement to the men's basketball team.

(Pl.'s Am. Compl. (doc. 17) 33.) To the extent that Brown intends to assert a breach-of-contract claim concerning the grievance policy, that claim is dismissed. As Defendants point out, the TCU Student-Athlete Handbook expressly provides as follows:

> This handbook is for informational purposes only. The provisions of this handbook do not constitute a contract, express or implied, between any student-athlete and Texas

Christian University. The provisions of this handbook are subject to change without notice.

(Defs.' App. in Supp. of Mot. to Dismiss (doc. 15) 2.) Under Texas law, courts have found no intent to be bound--and thus no contract-- when a university handbook or bulletin contains an express disclaimer of a contract within the document. *See Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 356 (Tex. App.--San Antonio 1998)(noting that a school bulletin stating that it was "for informational purposes only" and that the school "reserved the right to change or alter any statement herein" evidences a clear lack of intent to be bound by its terms); *see also Tobias v. Univ. of Texas at Arlington*, 824 S.W.2d 201, 211 (Tex. App.--Fort Worth 1991)(noting that a university lacked an intent to be bound when its catalog negated the existence of a contract).

The Court suspects Brown may instead be attempting to assert a procedural due-process claim under the United States Constitution as it relates to TCU's failure to follow its own grievance policy. Brown states that this Court has jurisdiction because "this action involves a question of the application of the due process provisions . . . of the Fourteenth Amendment, Section 1, to the United States Constitution." (Pl.'s Am. Compl. (doc. 17) 4.) Although Brown does not specifically allege a violation of the Fourteenth Amendment anywhere in his complaint, the Court infers such a claim from his allegation that "Defendants failed to follow the grievance policy

. . . [and] BROWN's grievance seeking reinstatement must be allowed and fair, impartial hearings must be conducted by TCU personnel." (*Id.* at 33-34.)

In pertinent part, the Fourteenth Amendment states "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend IVX, § 1.  "As a general matter the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)(internal quotation marks omitted); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)("[T]he Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities."). Brown does not allege that TCU is a state actor or could even be considered a state actor, nor has Brown alleged that TCU has acted under the color of state law. Instead, Brown acknowledges several times in his amended complaint that TCU "is a private higher learning institution in Texas." (Pl.'s Am. Compl. at 2-3.) Consequently, because TCU is not a state actor and the Fourteenth Amendment does not apply to it, his claims under the heading "TCU Student-Athlete Grievance Policy" must be dismissed. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)(noting that the Fourteenth Amendment offers no help against even wrongful or discriminatory private conduct).

Brown appears to allege other constitutional claims under the headings: "Discrimination," "Discrimination of One," and "Constitutional Right to Privacy." Brown again fails to allege any facts or cite any authority that would make his claims applicable to a private institution such as TCU. Accordingly, the rest of Brown's constitutional claims must be dismissed.

Brown also alleges that Defendants' conduct amounts to retaliation

> when the Defendants severely punished BROWN for formally
> requesting a decision from JOHNSON as to whether or not
> JOHNSON would approve TCU compliance to apply for a special
> circumstances waiver for immediate eligibility for BROWN
> and an explanation if a decision was made not to approve
> a waiver.

(Pl.'s Am. Compl. (doc. 17) 30.) Brown claims that Defendants retaliated against Brown by isolating him from the basketball team following the Browns' meeting with Johnson about the November 14, 2014 letter. To state a claim for retaliation, Brown would need to show: (1) he engaged in a statutorily protected activity, (2) that a materially adverse action was taken against him by Defendants, and (3) that there was a causal connection between the protected activity and the materially adverse action taken. *See Beaumont v. Tex. Dep't of Crim. Justice*, 468 F. Supp. 2d 907, 922 (E.D. Tex. 2006)(citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Setting aside that Brown is not an employee of TCU, Brown has failed to show that TCU retaliated against him after he engaged in a

protected activity. Brown does not allege how sending the letter to Johnson constitutes a statutorily protected activity. Accordingly, Brown's retaliation claim must be dismissed.

Brown alleges that Defendants have violated the Fair Housing Act by failing "to afford [him] the housing that he was originally assigned" and by failing "to notify [him] in a timely manner that his housing had been cancelled." According to Brown, he was left without a dorm room for two days to start the 2015-2016 academic year. Brown also claims he was denied his right to "use and enjoy a dwelling" in violation of the Fair Housing Act when he was not allowed access to his assigned dorm room until after a final decision was made on his grievance. Brown further alleges that TCU violated the Fair Housing Act when it committed fraud by wrongfully obtaining Brown's login information and impersonating Brown to request a change to his dorm assignment.

The Fair Housing Act, in pertinent part, makes it is unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

\*   \*   \*

(f)(1) To discriminate in the sale or rental, or to

otherwise make unavailable or deny, a dwelling to any buyer
or renter because of a handicap . . . .

42 U.S.C. § 3604. When Brown complains of being denied his right

to "use and enjoy a dwelling," he does not indicate a reason for his

denial that would fit within the statute. In other words, Brown fails

to allege that he was denied use of a dwelling because of

discrimination based upon his race, color, religion, sex, familial

status, national origin, or handicap. Brown also fails to allege his

dormitory constitutes a "dwelling" under the statute. Lastly, Brown

alleges that TCU violated the Fair Housing Act by using Brown's login

and password information to submit a change-in-dorm request without

his authorization. Even if true, Brown's allegation against TCU would

not state a claim for relief under the Fair Housing Act. Accordingly,

Brown's Fair Housing Act claims are dismissed.

Finally, Brown claims that Defendants breached their contract

with Brown after they

> **lured** BROWN to TCU with an agreement that BROWN would be
> a member of the men's basketball team with full rights and
> privileges for the 2014-2015 academic year and basketball
> season and that a special circumstances waiver would be
> filed with NCAA if evidence supporting such could be
> produced . . . .

(Pl.'s Am. Compl. (doc. 17) 34)(emphasis added). Brown further alleges

that "[u]pon [his] transfer to TCU, and after voluntarily forfeiting

his full grant-in-aid to attend Texas A&M Commerce, TCU failed to

honor it's [sic] agreement with [him]." (*Id*. at ¶ 14.) Brown fails

to allege, however, the existence of any contract between the parties

or the nature of its terms. Rather, it appears that Brown attempts to claim that he detrimentally relied on TCU's promise of full participation.

In order to establish a claim for detrimental reliance, a party must show:  (1) that the defendant made a promise, (2) that the plaintiff's reliance on this represented promise was reasonable, and (3) that the plaintiff's reliance caused a change in position to its detriment. *Roxco Ltd. v. Harris Specialty Chem., Inc.*, 85 F. App'x 375, 378 (5th Cir. 2004). Brown, however, contradicts this claim in paragraphs 21-25 of his amended complaint. In those paragraphs, Brown admits that he "sought and received a release from Texas A&M Commerce to transfer," and that **after** his release, he "contacted Southern Methodist University ["SMU"] . . . and TCU about a football transfer." Brown further admits that **after** speaking with the football programs at both SMU and TCU that "he decided to play basketball." Then, Brown and his father appeared at TCU and requested to speak with the head-basketball coach, Trent Johnson. Based on his own allegations, Brown could not have detrimentally relied on a promise by TCU's basketball program because his meeting with TCU's basketball program occurred after Brown sought and received his release from A&M Commerce. Thus, Brown has not alleged that he gave up anything at A&M Commerce or otherwise changed his position to his detriment to come play basketball for TCU.  Brown fails to state that a promise by TCU was a condition precedent to Brown's seeking a release and forfeiting

his scholarship to attend A&M Commerce.  Consequently, Brown's breach-of-contract claim must be dismissed.

## IV.   Conclusion

Based on the foregoing, Defendants' Amended Motions to Dismiss (docs. 20 & 21) are GRANTED and Defendants' Motion to Strike is DENIED.

SIGNED August 16, 2016.

_Terry R. Means_
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE